# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
### Civil Action No. 3:19-cv-00676-MOC-DSC

| | |
|---|---|
| JAMES R. BLACKWELDER, GARY E. CLINGAN, CHRISTINE M. HOWLAND, DANIEL JAWORSKY, JR., ABNER D. JOSEPH, GEFFREY B. MILLER, TIM M. SPRY, CHRISTOPHER J. WILSON, CLIFFORD E. VAUGHN, JR., MARNI WRINN and JEANNE A. ZGRODEK, <br><br> Plaintiffs, <br><br> v. <br><br> HORTER INVESTMENT MANAGEMENT, LLC, <br><br> Defendant. | **PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO DISMISS AND IN THE ALTERNATIVE TO STAY** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

STATEMENT OF FACTS ................................................................................................... 1

ARGUMENT ........................................................................................................................ 5

    I.    STANDARD ON MOTION ................................................................................ 5

    II.    THE COURT SHOULD DENY THE MOTION TO DISMISS AND INSTEAD DIRECT ARBITRATION BECAUSE HORTER'S OWN FAILINGS HAVE DENIED PLAINTIFFS ACCESS TO THE AAA FORUM ................................................................................................................ 6

        A.  The Signed Agreements Directed The Parties To An Arbitration Administered By The AAA Controls And Must Be Upheld............................ 7

        B.  Because The Parties Agreed To Arbitrate This Matter Before the AAA, This Court Should Stay This Case Pending Arbitration ......................... 9

        C.  Because The Parties Agreed To Arbitrate This Matter Before The AAA Venue Must Be Decided By AAA ....................................................... 10

    III.    EVEN IF THIS COURT FINDS THAT THE CLAIMS SHOULD NOT BE ADMINISTERED BY AAA, ARBITRATION IS STILL THE APPROPRIATE FORUM ..................................................................................... 10

    IV.    DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECITON 10(b) CLAIMS MUST BE DENIED ................................................................. 11

CONCLUSION................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Bamberger Rosenheim, Ltd., (Israel) v. OA Dev., Inc., (United States)*, 862 F.3d 1284, (11th Cir. 2017) ............................................................................................................................. 10

*Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267 (4th Cir. 2011) .................... 10

*Krafcik v. USA Energy Consultants, Inc.*, 107 Ohio App. 3d 59, 667 N.E.2d 1027 (8th Dist.1995) ............................................................................................................................................... 9

*Luckie v. Smith Barney, Harris Upham & Co.*, 999 F.2d 509 (11th Cir. 1993) ............................ 8

*Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F. Supp. 2d 436 (M.D.N.C. 2005 ............................................................................................................................................. 13

*Meckenstock v. International Heritage, Inc.*, No. 5:98-CV-237-BR(2), 1998 U.S. Dist. LEXIS (E.D.N.C. Dec. 9, 1998)............................................................................................................ 12

*Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)................................ 6

*PaineWebber, Inc. v. Rutherford*, 903 F.2d 106 (2d Cir. 1990) ..................................................... 8

*Richard C. Young & Co., Ltd. v. Leventhal*, 389 F.3d 1 (1st Cir. 2004) ..................................... 10

*Ridge at Red Hawk, LLC. v. Schneider*, 493 F.3d 1174 (10th Cir. 2007).................................... 10

*Roney & Co. v. Goren*, 875 F.2d 1218 (6th Cir. 1989)............................................................. 7, 8

*Smith Barney, Inc. v. Critical Health Sys.*, 212 F.3d 858 (4th Cir. 2000) ..................................... 8

*SW Ohio Carpenters v. E & I Const.*, No. 1:05-CV-622, 2006 WL 2035646 (S.D. Ohio July 18, 2006) ........................................................................................................................................ 5

*UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643 (2d Cir. 2011) ....................... 10

*Wolcott v. Summerville at Outlook Manor, L.L.C.*, 61 N.E.3d 853 (Ohio Ct. App. 2016)............. 9

**STATUTES**

9 U.S.C. § 5................................................................................................................................... 11

Ohio Rev. Code § 2711.02(B). ....................................................................................................... 9

**OTHER AUTHORITIES**

Consumer Arbitration Rules, American Arbitration Association, Rule 16(a) (September 1, 2014) ................................................................................................................................... 11

Plaintiffs James R. Blackwelder, Gary E. Clingan, Christine M. Howland, Daniel Jaworsky, Jr., Abner D. Joseph, Geffrey B. Miller, Tim M. Spry, Christopher J. Wilson, Clifford E. Vaughn, Jr., Marni Wrinn, and Jeanne A. Zgrodek ("Plaintiffs") respectfully submit this Memorandum of Law in opposition to the Motion to Dismiss Plaintiffs' Complaint, or alternatively, to Stay the Proceedings and Compel Arbitration ("Motion") filed by Defendant Horter Investment Management, LLC ("Defendant" or "Horter").

## STATEMENT OF FACTS

Plaintiffs are all retail investors who entrusted their retirement savings to Horter. Horter caused all of the Plaintiffs other than Marni Wrinn ("LJM Plaintiffs") to place a portion of their retirement savings into the LJM Fund – an exotic, highly leveraged mutual fund that sought to generate a return by investing in "short volatility" through buying and writing uncovered options on S&P futures contracts – which has been compared to picking up nickels and dimes in front of a steamroller. *See* the Declaration of Christopher J. Gray in Opposition to Defendant Horter Investment Managements, LLC's Motion to Dismiss or Stay ("Gray Decl."), Exhibit 6 ("Complaint"), at ¶ 18. In early February 2018, the LJM Fund dropped more than 80% over the course of just two days during a spike in the volatility index (VIX), losing more than $600 million for investors like the LJM Plaintiffs. *Id.* at ¶ 19.

According to a fact sheet disseminated by the LJM Fund, the LJM Fund's investment objective was generally to seek "capital appreciation and capital preservation with ***low correlation to the broader U.S. equity market***." *Id.* at ¶ 20 (emphasis added). The LJM Fund sought to achieve this objective by engaging in uncovered short volatility trading, which it described as follows:

> The [LJM] Fund seeks to achieve its investment objectives by capturing gains on options sold on S&P futures contracts that can be purchased ("closed") at a later

1

> date for a lower price than the price realized when originally sold.... In the aggregate, the [LJM] Fund is typically "net short" in the portfolio of contracts that it holds, which means that the [LJM] Fund holds more uncovered option contracts than covered.

*Id.*

In lay terms, the LJM Fund's "short volatility" investment strategy used to generate returns for investors was the equivalent of picking up nickels and dimes in front of a steamroller. This analogy is appropriate because, in order to execute on its "short volatility" investment strategy, the LJM Fund implemented an options trading scheme called a "short strangle" – which is an options trading strategy widely known to have an unlimited downside (meaning no preservation) and limited upside (meaning no real growth). *Id.* at ¶ 21.

A cursory review of the LJM Fund's performance from 2013 to the various dates of purchase would have revealed to Horter that while the LJM Fund's returns for the same time period were smoother than the S&P 500, the LJM Fund had suffered large losses in 2014 and 2015 when the S&P 500 dropped. *Id.* at ¶ 22. Moreover, using its inception to date performance, it would have been clear to any objective investment professional familiar with the LJM Fund's expenses and historical performance that the LJM Fund's performance record simply did not adequately compensate investors for the risks of the esoteric options "strangle" strategy employed by LJM Fund. *Id.* at ¶ 25.

In or about August 2016, Horter sold Plaintiff Marni Wrinn an investment in an organization known as FIP, LLC ("FIP"). *Id.* at ¶ 37. A Horter representative named Marshall Wise characterized the investment as an interest in certain secured loans that would pay a fixed level of interest income every year. *Id.* Wise characterized FIP as much safer than the stock market because instead of rising or falling in value, the principal funds invested with FIP would be returned in full after a fixed loan term. *Id.* at ¶ 38. Despite Wise's claims, FIP turned out to

2

be more or less a Ponzi scheme. *Id.* at ¶¶ 41-47. By the end of 2018, Ms. Wrinn's GoldStar Trust custodial statement for the period ended December 31, 2018 shows the FIP investment valued at $1.30, down from $60,061.30 the previous year. *Id.* at ¶ 49.

Each Plaintiff signed a Quarterly Client Agreement with Horter that stated, among other things, for arbitration of any and all disputes and provides that the agreement shall be "construed and interpreted in accordance with the substantive laws of the State of Ohio." Gray Decl. at ¶ 3, Exhibit 1. The operative arbitration clause reads as follows:

> Client and Advisor both agree that all controversies which may arise between them concerning any transaction or construction, performance or breach of this agreement that cannot be settled, be submitted to binding arbitration in accordance with the rules, then in effect, of the American Arbitration Association. Client and Advisor agree that any such arbitration would be venued in Cincinnati, Ohio. All awards rendered by the arbitrators shall be final and judgement upon award may be entered in any court of competent jurisdiction. This Agreement is not intended to limit any right the Client may have under any provision of state and federal securities laws.

(Gray Decl. at ¶ 4)

On or about May 29, 2019, Ms. Wrinn filed an Notice of Arbitration and Statement of Claim ("Wrinn Complaint") against Horter before the American Arbitration Association ("AAA"). *See* Gray Decl. ¶ 5, Exhibit 2. On June 11, 2019, AAA sent a letter to counsel for Ms. Wrinn and counsel for Horter refusing to administer the Wrinn Complaint proceeding and stating in relevant part as follows:

> Claimant has filed with us a demand for arbitration. We note that the arbitration clause provides for arbitration by the American Arbitration Association ("AAA").
>
> Prior to the filing of this arbitration, Horter Investment Management, LLC failed to comply with the AAA's policies regarding consumer claims. Accordingly, we must decline to administer this claim and any other claims between Horter Investment Management, LLC and its consumers. These policies can be found on our web site, www.adr.org, in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules").

3

> On a previously-filed consumer matter, this business did not timely submit its share of the filing fees and/or failed to waive a provision in its consumer contract that the AAA identified as a material and substantial deviation from the Protocol. The AAA sent correspondence informing the business that it may decline to administer consumer arbitrations involving this business and requested that the business remove the AAA from its consumer arbitration agreements so that there would be no confusion to the public.
>
> In addition, Horter Investment Management, LLC has not registered its consumer clause on the AAA's Consumer Clause Registry in accordance with R-12 of the Consumer Rules. Please note that submission of the expedited review fee on any particular matter does not satisfy the separate obligation to register the consumer clause.
>
> Accordingly, we have administratively closed our file and will refund any payment received by the filing party. According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

(Gray Decl. at ¶ 6, Exhibit 3).

On or about July 22, 2019, Plaintiffs James R. Blackwelder, Gary E. Clingan, Christine M. Howland, Daniel Jaworsky, Jr., Abner D. Joseph, Geffrey B. Miller, Tim M. Spry, Christopher J. Wilson, and Jeanne A. Zgrodek (LJM Plaintiffs) filed a Notice of Arbitration and Statement of Claim against Horter ("LJM Plaintiffs' Complaint") before the AAA. *See* Gray Decl. at ¶ 7, Exhibit 4. On or about August 28, 2019, AAA sent a letter to counsel for the LJM Plaintiffs and counsel for Horter again refusing to administer the LJM Plaintiffs' Complaint using substantially identical language they used in refusing to administer the Wrinn Complaint. Gray Decl. at ¶ 8.

In addition to the dispute currently pending before this Court, there is also a similar dispute related to the venue for arbitration of customer claims between Horter and a customer that arose in a Colorado State Court case, captioned *Kirk v. Asset Protection One, Inc., et al.*, Case No. 2018 CV 31144 (Boulder County Colo. District Court) (July 1, 2019), whereby the court stayed the matter and granted defendants' motion to compel arbitration. *See* Gray Decl. at

4

¶ 10 ("*Kirk* Order").  After the *Kirk* Order was granted, AAA chose to administer the arbitration in that matter.  *Id.* at ¶ 11.

Prior to the filing of this Memorandum of Law, Plaintiffs offered to stipulate to stay this action and engage in arbitration before AAA, and even offered to do so at a forum convenient to Defendant in Cincinnati, Ohio as a gesture of good faith, which would obviate the need for the Court to decide the Motion, but Horter declined this offer.  *See* Gray Decl. ¶ 14.

**ARGUMENT**

**I.   STANDARD ON MOTION**

As the Court ruled in *SW Ohio Carpenters v. E & I Const.*, No. 1:05-CV-622, 2006 WL 2035646, at *2 (S.D. Ohio July 18, 2006):

> On consideration of a motion to dismiss under either Rule 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure, the court must take all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. See *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir.1994).

Thus, for purposes of a motion to dismiss under the Rule, the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995).

However, in cases where a defendant moves to dismiss due to lack of subject matter jurisdiction pursuant to Rule 12(b)(1) that is factual in nature, the Court should resolve the disputed jurisdictional facts:

> [N]o presumptive truthfulness applies to the factual allegations. Such a factual attack on subject matter jurisdiction commonly has been referred to as a "speaking motion." *See generally C. Wright & A. Miller, Federal Practice and Procedure* § 1364, at 662–64 (West 1969*)*. When facts presented to the district

5

court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)*; Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir.1977).

*Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)

## II. THE COURT SHOULD DENY THE MOTION TO DISMISS AND INSTEAD DIRECT ARBITRATION BECAUSE HORTER'S OWN FAILINGS HAVE DENIED PLAINTIFFS ACCESS TO THE AAA FORUM

As noted above, all Plaintiffs except for Clifford E. Vaughn, Jr. (who became a client at a later date) filed Notice of Arbitrations and Statement of Claims with AAA before commencing this lawsuit. Plaintiffs were forced to commence this lawsuit because AAA rejected the claim for administration due to Horter's failure to comply with AAA rules, more specifically stating:

> Prior to the filing of this arbitration, Horter Investment Management, LLC failed to comply with the AAA's policies regarding consumer claims. Accordingly, we must decline to administer this claim and any other claims between Horter Investment Management, LLC and its consumers. These policies can be found on our web site, www.adr.org, in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules").
>
> On a previously-filed consumer matter, this business did not timely submit its share of the filing fees and/or failed to waive a provision in its consumer contract that the AAA identified as a material and substantial deviation from the Protocol. The AAA sent correspondence informing the business that it may decline to administer consumer arbitrations involving this business and requested that the business remove the AAA from its consumer arbitration agreements so that there would be no confusion to the public.
>
> In addition, Horter Investment Management, LLC has not registered its consumer clause on the AAA's Consumer Clause Registry in accordance with R-12 of the Consumer Rules. Please note that submission of the expedited review fee on any particular matter does not satisfy the separate obligation to register the consumer clause.

(Gray Decl. at ¶ 6, Exhibit 3).

6

Curiously though, while Horter now says it wants to enforce its arbitration agreement, it has refused to agree to a Stipulation and Proposed Order that would provide it with exactly the arbitration called for under Horter's own agreement. *See* Gray Decl. at ¶ 12.

Plaintiffs are entitled to specific performance of Horter's agreements to comply with AAA rules, including specific performance of Horter's agreements to comply with AAA rules regarding the AAA's administration of the arbitration. While the AAA has declined to administer the Plaintiffs' arbitrations, the AAA will likely comply with any court order requiring arbitration, based on its actions in the *Kirk* action and apparently an advisory opinion provided in another action. *See* Gray Decl. at ¶ 13.

If this Court orders Horter to arbitrate before the AAA, the AAA will then likely administer the Plaintiffs' arbitration without requiring Horter to waive or remove the Cincinnati venue provision from its arbitration agreements. Plaintiffs request this Court to issue this order.

Horter appears to take the position that it only agreed to arbitrate under AAA *rules* and did not agree to arbitrate *before the AAA* in an arbitration administered by the AAA. Plaintiffs disagree and the law is to the contrary.

     **A.**    **The Signed Agreements Directed The Parties To An Arbitration Administered By The AAA Controls And Must Be Upheld.**

Courts have continuously found that in cases where an arbitration agreement is in place that agreement is controlling. In *Roney & Co. v. Goren,* 875 F.2d 1218, 1219 (6th Cir. 1989), the parties agreed to an arbitration agreement that provided that any dispute must " be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange ['NYSE']." The defendant in *Roney & Co.* took the position that the arbitration agreement to comply with NYSE arbitration rules did not require arbitration before the NYSE. *Id.* Accordingly, the defendant filed her arbitration claim before

7

the National Association of Securities Dealers, Inc. ("NASD"). *Id.* at 1220. The district court stayed the NASD arbitration and "compel[led] arbitration before the NYSE." *Id.* On appeal, the Sixth Circuit agreed that the agreement to arbitrate under NYSE rules was a "forum selection clause" "providing for arbitration solely before the NYSE." *Id.* at 1223 (stating that "the parties . . . . are contractually bound to honor their mutual predispute choice of NYSE arbitration.").

In *PaineWebber, Inc. v. Rutherford,* 903 F.2d 106, 108 (2d Cir. 1990), the Second Circuit Court agreed the Sixth Circuit and affirmed a district court ruling that an agreement to arbitrate "in accordance with the rules" of various self-regulatory organizations ("SROs"), including the NYSE and NASD, was an agreement "to arbitrate before one of the SROs rather than the AAA."

In *Luckie v. Smith Barney, Harris Upham & Co.,* 999 F.2d 509, 514 (11th Cir. 1993) the Eleventh Circuit agreed that an agreement to arbitrate is binding based upon those specific terms, stating: "Appellant Kahn has agreed with Smith Barney to arbitration 'in accordance with the rules, then obtaining, of either [of] the Boards of Arbitration' of the three SROs. Through these agreements, appellants and Smith Barney have agreed to submit disputes to arbitration before the three SROs–the NYSE, AMEX and NASD.'"

Further, the Fourth Circuit has also ruled on this matter, stating in *Smith Barney, Inc. v. Critical Health Sys.,* 212 F.3d 858, 861 (4th Cir. 2000):

> The agreement provides that "[a]ny controversy arising out of or relating to any of my accounts . . . shall be settled by arbitration, in accordance with the rules then in effect of the NASD, or the Boards of Directors of the NYSE or the American Stock Exchange, Inc." The agreement specifies that arbitration may take place according to the rules of three SROs. It does not mention any other organization and does not specifically provide for arbitration before the AAA. Under the principle of *expression unius est exclusio alterius*, arbitration is limited to the three prescribed fora.

8

In the instant matter, Horter apparently takes the position that its arbitration agreements mandate compliance with AAA arbitration rules do not require it to arbitrate before the AAA. This attempt to avoid a forum selection clause that was contractually agreed upon by the parties has continuously been rejected by the Courts, and as such, must be rejected here. Therefore, based on the foregoing authorities, the Court should give effect to the plain meaning of the parties' agreement and direct arbitration administered by AAA.

### B. Because The Parties Agreed To Arbitrate This Matter Before The AAA, This Court Should Stay This Case Pending Arbitration.

The arbitration agreements between the parties provide that they are governed by Ohio Law. *See* Gray Decl. at ¶ 3, Exhibit 1. As such, Ohio Law dictates that:

> (B) If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

Ohio Rev. Code § 2711.02(B).

Under this Ohio statute, a stay pending arbitration, rather than dismissal, is mandatory. As an Appellate Court in Ohio held:

> Under R.C. 2711.02 where any action is brought on an issue covered by a written arbitration agreement, the trial court "shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement." The language of this provision is mandatory and it "shall" be enforced.

*Krafcik v. USA Energy Consultants, Inc.*, 107 Ohio App. 3d 59, 64, 667 N.E.2d 1027, 1030 (8th Dist.1995); *see also Wolcott v. Summerville at Outlook Manor, L.L.C.,* 61 N.E.3d 853, 859 (Ohio Ct. App. 2016) ("The standard set forth in our prior cases . . . makes the grant of the stay non-discretionary.").

If this Court finds that all of the Plaintiffs' claims for liability should be referred to arbitration, the present action in this Court should be stayed rather than dismissed. This would afford the parties a forum to not only address disputes resulting from either party's failure to comply with the order directing arbitration, but also allow an open forum for the confirmation of any award entered in the arbitration.

### C. Because The Parties Agreed To Arbitrate This Matter Before The AAA, Venue Must Be Decided By AAA.

Since there has been no agreement between the parties, and Defendant refused to accept Plaintiffs' offer to arbitrate in Cincinnati, AAA must make the ultimate decision on the enforceability of the venue selection clause because the venue determination is a procedural matter for the arbitrators to decide. *See UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 655 (2d Cir. 2011); *see also Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP,* 645 F.3d 267, 273-74 (4th Cir. 2011); *Ridge at Red Hawk, LLC. v. Schneider,* 493 F.3d 1174, 1178 & n.3 (10th Cir. 2007*); Richard C. Young & Co., Ltd. v. Leventhal*, 389 F.3d 1, 5 (1st Cir. 2004); *Bamberger Rosenheim, Ltd., (Israel) v. OA Dev., Inc., (United States)*, 862 F.3d 1284, 1288 (11th Cir. 2017).

Therefore, this Court should not only direct the parties to an arbitration administered by AAA, but should also permit AAA to select the venue or venues for arbitration pursuant to AAA rules.

### III. EVEN IF THIS COURT FINDS THAT THE CLAIMS SHOULD NOT BE ADMINISTERED BY AAA, ARBITRATION IS STILL THE APPROPRIATE FORUM

In the alternative, to directing the parties to arbitrate before AAA, the Court should appoint an arbitrator so that Horter does not purposely delay the hearing of Plaintiffs' claims by refusing to agree to terms for appointment of an arbitrator.

10

According to 9 U.S.C. § 5:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire . . . .

This statute allows the court to appoint arbitrators if a party has failed to avail itself of the method in the arbitration agreement for appointing arbitrators or if no method for appointing arbitrators is set forth. Here, Plaintiffs' position is that the parties agreed to arbitrate under AAA rules, specifically Rule 16(a), which provides as follows:

> If the parties have not appointed an arbitrator and have not agreed to a process for appointing the arbitrator, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint an arbitrator from the National Roster.

According to Rule 16(a), when, as in this case, the parties have not appointed an arbitrator or agreed to a process for appointing the arbitrator, the AAA will appoint an arbitrator. But, in the current posture, the AAA arguably cannot appoint an arbitrator as provided in Rule 16(a) because Horter has not agreed to allow the AAA to administer the case. *See* Gray Decl. at ¶ 12. Therefore, because Horter has failed to avail itself of the parties' agreed method for appointing arbitrators, this Court is authorized to appoint arbitrators under 9 U.S.C. § 5 and must do so in the interests of justice to avoid Defendant's purposeful delay tactics.

## IV. DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECTION 10(b) CLAIMS MUST BE DENIED

To establish a case of securities fraud under Section 10(b) of the Exchange Act and Rule 10b-5, a plaintiff must prove that: (1) the Defendant made a misstatement or an omission (2) of material fact (3) with scienter (4) on which the plaintiff reasonably relied (5) that proximately

11

caused his injury. *Meckenstock v. International Heritage, Inc.,* No. 5:98-CV-237-BR(2), 1998 U.S. Dist. LEXIS at *8 (E.D.N.C. Dec. 9, 1998) (*citing Malone v. Microdyne Corp.,* 26 F.3d 471, 475 (4th Cir. 1994)).

In the Complaint, Plaintiffs have pleaded that "Defendant made untrue statements of material fact, and omitted to disclose material facts, that were intended to and did deceive Plaintiffs. Specifically, Defendant recommended or induced Plaintiffs to invest in LJM Fund and FIP but failed to disclose the true risks of LJM Fund and FIP." Complaint at ¶ 51. Plaintiffs rely on a theory of fraud by omission and have alleged that "Defendant omitted to state material facts necessary to make its statements, in light of the circumstances under which they were made, not misleading, in violation of Section 10(b) of the Exchange Act and Rule 10b-5, as further alleged above." *Id.* As an alternative to predicate liability theory (other than misrepresentations or omissions), Plaintiffs allege that "Defendant's actions and inactions with respect to indiscriminately causing its customers', including Plaintiffs', accounts to be invested in LJM Fund via Horter's portfolio allocation practices, constitute an act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." Complaint at ¶ 53.

Additionally, Plaintiffs have generally alleged scienter by stating in the Complaint that "Defendant knew or recklessly disregarded that their statements and omissions concerning LJM Fund and FIP were false and misleading, as further alleged above." Complaint at ¶ 52. Plaintiffs have also alleged that Defendants had access to facts showing that the LJM Fund was an extraordinarily high-risk and unsuitable investment for retirees (which facts were not disclosed to Plaintiffs). Complaint at ¶¶ 22-29. Plaintiffs have also alleged reliance, transaction causation and loss causation. Complaint at ¶¶ 54-58.

In these circumstances, Plaintiffs have alleged the elements of a Section 10(b)/Rule 10b-5 claim. To the extent that the Court believes that additional particularity is required concerning the misrepresentations and omission or scienter, Plaintiffs respectfully request leave to replead. *See Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.,* 351 F. Supp. 2d 436, 448 (M.D.N.C. 2005) (granting leave to replead claims found deficient under the particularity requirements of Fed. R. Civ. P. 9(b) where court had not previously found those claims deficient and party's failure to amend at an earlier date was not willful)(citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1300 (3d Ed. 2004)).

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this litigation be stayed and that Horter be required to arbitrate with the Plaintiffs before the AAA under AAA rules. Alternatively, Plaintiffs ask for appointment of arbitrators. Plaintiffs further request leave to replead their First Cause of Action for violation of Securities Exchange Act Section 10(b) and Rule 10b-5 promulgated thereunder in the event that the Court finds any deficiency in the pleading of these claims.

This the 28th day of February, 2020.

        JAMES McELROY & DIEHL, P.A.

/s/ Fred B. Monroe
By:   Fred B. Monroe (N.C. State Bar No. 23438)
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
(704) 372-9870
(704) 333-5508 (fax)
fmonroe@nmdlaw.com

LAW OFFICE OF
CHRISTOPHER J. GRAY, P.C.
Christopher J. Gray (*Pro Hac Vice*)
Michael J. DeRienzo
360 Lexington Avenue, 14th Floor
New York, New York 10022
(212) 838-3221
(212) 937-3139 (fax)
chris@investorlawyers.net
mike@investorlawyers.net

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing **PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO DISMISS AND IN THE ALTERNATIVE TO STAY** was filed electronically and duly served upon counsel for Defendant, by depositing a copy in the United States Mail, sufficient first class postage pre-paid, addressed as follows:

Kathleen K. Lucchesi
Lincoln Derr PLLC
4350 Congress Street, Suite 575
Charlotte, NC 28209

Matthew L. Fornshell
Ice Miller LLP
250 West Street, Suite 700
Columbus, Ohio 43215

*Counsel for Defendant Horter Investment Management, LLC*

This the 28th day of February, 2020.

JAMES, McELROY & DIEHL, P.A.

/s/ Fred B. Monroe
Fred B. Monroe (N.C. State Bar No. 23438)
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
(704) 372-9870
(704) 333-5508 (fax)
fmonoe@jmdlaw.com
*Counsel for Plaintiffs*