# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
### Civil Action No. 3:19-cv-00676-MOC-DSC

| | |
|---|---|
| JAMES R. BLACKWELDER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HORTER INVESTMENT MANAGEMENT, LLC, <br><br> Defendant. | **DEFENDANT HORTER INVESTMENT MANAGEMENT, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT, OR ALTERNATIVELY, TO STAY THE PROCEEDINGS AND COMPEL ARBITRATION** |

Pursuant to Rule 7.1 of the Local Rules Governing Civil Cases for the United States District Court for the Western District of North Carolina and Rules 12(b)(1), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, Defendant **HORTER INVESTMENT MANAGEMENT, LLC**, by and through undersigned counsel, respectfully submits this Reply Memorandum in Support of its Motion to Dismiss Plaintiffs' Complaint, or Alternatively, to Stay the Proceedings and Compel Arbitration (the "Motion").

As the Motion makes clear, Plaintiffs' claims are subject to an arbitration provision in their contracts with Horter. That arbitration provision has two basic elements – that the arbitration would take place in accordance with the rules of the American Arbitration Association and that it would take place in Cincinnati, Ohio. As a result, Horter simply requests that the Court, pursuant to its authority under the Federal Arbitration Act, enforce the arbitration provision as written and either dismiss this action for lack of subject-matter jurisdiction, or alternatively compel the parties to arbitration in compliance with the plain language of the arbitration provision.

Plaintiffs'[1] Opposition (Doc. No. 11) widely misses the mark and argues against relief that Horter is not seeking. Horter has never refused to proceed to arbitration before the AAA, so long as that arbitration follows the terms of the arbitration provision in the agreements. The plain language of the arbitration provision does not *require* AAA arbitration; it simply requires that AAA rules be followed and that the arbitration be held in Cincinnati. The Plaintiffs would have this Court read non-existent words into Horter's client agreement as a means to an end.

Although Plaintiffs filed their Complaint asking that this Court resolve their claims, without reference to arbitration in their Complaint, and even demanded a jury trial on their claims, they now ask this Court to rewrite the arbitration provision and order that arbitration must proceed before the AAA while ignoring the venue requirement in the arbitration agreement. In their Opposition, Plaintiffs do not dispute that their claims are subject to an arbitration clause, nor do they question the validity of that clause. Instead, they agree that their claims should go to arbitration. But seeking relief they have demanded neither in their Complaint nor through a motion filed with the Court, they ask the Court to modify the parties' agreement by deleting (or permitting the AAA to delete) the venue provision in the Quarterly Client Agreement. Further, Plaintiffs ask the Court to subject Horter to an arbitration provision to which it never agreed by directing the AAA to appoint an arbitrator or appointing one itself, when Horter has never refused to proceed to arbitration under the terms of its agreements.

The Court should follow the lead of the court in *Kirk v. Asset Protection One, Inc. et al.*, No. 2018-CV-31144 (July 1, 2019) (attached to the Memorandum in Support of the Motion as **Exhibit 2-A** (Doc. No. 4-3)). In that case, the state court in Colorado faced an issue identical to that presented here – namely, the AAA's refusal to arbitrate a claim against Horter based upon the

---

[1] Unless defined herein, capitalized terms have the same meaning as they did in Horter's opening memorandum (Doc. No. 4).

same arbitration provision at issue here. The court there ruled that the arbitration provision does not require that the arbitration be conducted by the AAA,[2] and instead simply enforced the arbitration provision as written and directed the parties to proceed to arbitration in compliance with the terms of the agreement. The court further held that, if for any reason the AAA refused to conduct the arbitration in accordance with the terms of the agreement such that compliance with them was impossible, the provision requiring arbitration in accordance with AAA rules was severable. Motion, **Exhibit 2-A** (Doc. No. 4-3), p. 4, fn. 2. That is the same relief that Horter seeks here. The decision in *Kirk* is eminently sensible because it is based in the language of the parties' agreements and attempts to carry them out so far as is possible.

Plaintiffs make much of the fact that Horter did not agree to a stipulated order that would call for the AAA to arbitrate the dispute in Cincinnati. But as Horter indicated in response to the proposed stipulation,[3] there is no way to know whether the AAA would respond to a stipulation in the same way that it responded to the order entered after the court compelled arbitration in the *Kirk* case, and moreover the stipulation would modify the terms of the arbitration provision by requiring that the AAA conduct the arbitration. As set forth above, while the arbitration provision provides for arbitration under the AAA rules, it does not require arbitration by the AAA itself. Accordingly, it is not the case that Horter simply declined an offer to arbitrate the case in Cincinnati. Indeed, Horter has consistently and repeatedly stated that it is seeking arbitration that complies with the arbitration provision in the parties' agreement – arbitration under the AAA rules that is conducted

---

[2] Plaintiffs spend several pages arguing that the reference to the AAA rules means that the parties agreed to arbitration before the AAA. They rely upon cases involving the stock exchanges and the so-called "AMEX Window." Opposition, p. 7-8. Other courts interpreting provisions such as the one in the Quarterly Client Agreements that call for AAA arbitration, have reached different results. *Kirk*, p. 4; *See also Nachmani v. By Design, LLC*, 74 A.D.3d 478, 901 N.Y.S.2d 838 (App. Div. 1st Div. 2010) (describing an arbitration provision that called for arbitration "in accordance with the AAA Commercial Rules" as a "choice of law" clause regarding the arbitration rules rather than a selection of the AAA as the arbitral forum).

[3] Horter's response to the proposed stipulation is attached as page 1 to **Exhibit 9** to the Gray Declaration (Doc. No. 12-9).

3

CO\6397316.1
Case 3:19-cv-00676-MOC-DSC   Document 13   Filed 03/06/20   Page 3 of 5

in Cincinnati. That arbitration could certainly be conducted by the AAA if it is willing to do so, but the plain language of the arbitration provision does not require it.

Finally, the Plaintiffs argue that venue is a procedural issue for the arbitrators to decide, such that this Court should order the parties to arbitration but leave questions of venue to the AAA. The cases they rely upon, however, are inapposite. Much more directly relevant are cases such as *Sterling Financial Inv. Group, Inc. v. Hammer*, 393 F.3d 1223 (11th Cir. 2004), where a party had invoked arbitration before the NASD in Houston, Texas even though the arbitration provision called for arbitration in Boca Raton, Florida. The 11th Circuit held that the federal courts have jurisdiction to enforce a forum selection clause in a valid arbitration agreement that has been disregarded by the arbitrators. *Id*. at 1225. Were the AAA or another arbitrator to decide to hold the arbitration outside of Cincinnati, the same logic would apply here. Indeed, if it did not, then the courts would be rewriting 9 U.S.C. § 4, which authorizes a district court to compel arbitration pursuant to the terms of a valid arbitration provision. *See also Sterne, Agree & Leach, Inc. v. Fellus*, 2010 WL 11565357, *5 (N.D. Ala. April 16, 2010) (holding that unless the party opposing the venue provision has made a "strong showing that enforcement would be unfair or unreasonable" the court must enforce the venue provision).

In *KKW Enters v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 50 (1st Cir. 1999), the court noted that "The venue in which arbitration is to take place is a 'term' of the parties' arbitration agreements....Courts may not rewrite the parties' agreements and compel arbitration of their dispute in a forum which is not one of those enumerated in an arbitration agreement's forum selection clause." *See also James v. Conceptus, Inc.*, 851 F.Supp.2d 1020 (S.D. Tex. 2012); *Newman ex rel. Wallace v. First Atlantic Resources Corp.*, 170 F.Supp.2d 585, 592-3 (M.D.N.C. 2001). Because the venue is a term of the parties' agreement, any order directing

4

arbitration pursuant to the Quarterly Client Agreements must provide that venue is in Cincinnati. Any other outcome would result in the Court rewriting the agreement for the parties.

Accordingly, the Court must find that the dispute is subject to arbitration and should dismiss the matter for lack of jurisdiction. Alternatively, it should compel the parties to proceed to arbitration in accordance with their agreements.

Respectfully submitted this 6th day of March 2020,

>*/s Kathleen K. Lucchesi*
>Kathleen K. Lucchesi, NC State Bar No.: 24386
>Lincoln Derr PLLC
>4350 Congress Street, Ste. 575
>Charlotte, NC 28209
>T: 704-943-3949
>F: 866-393-6043
>Kathleen.Lucchesi@lincolnderr.com
>
>Matthew L. Fornshell (OH 0062101)
>    (*admitted pro hac vice*)
>Ice Miller LLP
>250 West Street, Ste. 700
>Columbus, Ohio 43215
>T: 614-462-2700
>F: 614-462-5135
>Matthew.Fornshell@icemiller.com
>
>*Counsel for Defendant Horter Investment Management, LLC*